NOT FOR PUBLICATION                                               (Doc. No. 6)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| RALPH E. OWEN, | |
| Plaintiff, | Civil No. 14-924 (RBK/JS) |
| v. | |
| THE HARTFORD INSURANCE COMPANY, | **OPINION** |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Ralph E. Owen ("Plaintiff") to remand this case to the Superior Court of New Jersey, Law Division, Gloucester County. The Hartford Insurance Company ("Defendant") argues that this this declaratory judgment action was properly removed pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, and that jurisdiction continues to exist over this case. Because the court finds that it would be improper to exercise jurisdiction over this case, Plaintiff's motion to remand will be **GRANTED**.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The underlying litigation giving rise to this declaratory action can be traced back to Plaintiff's trip to preside over a Rotary International ("Rotary") meeting on January 15, 2009. At that time, Plaintiff was allegedly the District Governor for Rotary District 7640. A branch of Bank of America was situated on the first floor of the building where Rotary District 7640 had its office on the second floor. As Plaintiff attempted to park the vehicle he was operating, it crashed through the front window of the bank, injuring a Bank of America employee named

Jennie Macauley. On January 4, 2011, Macauley filed a complaint in New Jersey court against Plaintiff and Sheila Owen, the vehicle owner. Summary judgment has since been entered in favor of Sheila Owen in that case (the "Macauley litigation"), and she is no longer a party in the Macauley litigation.

After the Macauley litigation was initiated, Rotary was added as a third-party defendant there pursuant to a third-party complaint filed by Plaintiff. Rotary was brought into the Macauley litigation based upon the theory that Plaintiff was acting in his capacity as its officer when he injured Ms. Macauley. Hartford, the defendant here, is Rotary's liability insurance carrier.

Numerous motions have been filed in the Macauley litigation, including a motion to dismiss the third party complaint against Rotary, which was denied, and a motion to file an amended pleading naming Rotary as a direct defendant, which was granted. Rotary has been aware of the claims involved in the Macauley litigation since February 2011, when plaintiff notified it of the suit. After receiving notice from Hartford that it was reserving its rights to deny coverage, Plaintiff filed a complaint in state court seeking a declaration that Hartford owed him insurance coverage under Rotary's policy. Hartford then removed the declaratory action to this Court, alleging jurisdiction based upon diversity of citizenship. Plaintiff then filed the instant motion, asking this Court to decline to exercise jurisdiction due to the pendency of parallel proceedings in state court involving similar issues. After the instant motion was fully briefed, the Third Circuit issued a precedential opinion in Reifer v. Westport Insurance Corp., No. 13-2880, 2014 WL 1674112 (3d Cir. Apr. 29, 2014), in which it set forth a list of factors that district courts should consider when determining whether to exercise jurisdiction over declaratory judgment actions involving insurance coverage. Because of its potential application here, the

Court allowed the parties to submit additional briefing on the application of Reifer. Both parties briefed the Reifer case, and the motion is now ripe for consideration.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. To defeat a plaintiff's motion to remand, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. See Glenmede Trust Co. v. Dow Chem. Co., 384 F. Supp. 423, 433-34 (E.D. Pa. 1974) ("It is well settled that district courts should remand close or doubtful cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case.").

## III.   DISCUSSION

### A. Abstention

Under the Declaratory Judgment Act (the "DJA"), a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This "confers discretionary, rather than compulsory jurisdiction upon federal courts." Reifer, 2014 WL 1674112, at *4 (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)). The DJA affords district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). Thus, under what is sometimes known as the Brillhart-

Wilton abstention doctrine, district courts may dismiss, remand, or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims.  See Evanston Ins. Co. v. Van Syoc Chartered, 863 F. Supp. 2d 364, 367 (D.N.J. 2012).  Plaintiff contends that under the Brillhart-Wilton doctrine, the Court should decline to exercise jurisdiction over this declaratory action due to the pending state court litigation.

In the leading Third Circuit case on this issue prior to Reifer, the Third Circuit held that a district court should have declined to exercise jurisdiction over a suit brought under the DJA.  State Auto Ins. Cos. v. Summy, 234 F.3d 131 (3d Cir. 2000).  In that case, the parents of a child who was poisoned by lead paint filed suit in state court against their landlord, who owned the building.  Id. at 131.  After the landlord notified its liability insurance carrier, State Auto Insurance, of the claim, the insurer advised the landlord that no coverage existed for the landlord's liability on the lead paint poisoning claim.  Id. at 132.  State Auto then filed a declaratory judgment action in federal court, seeking a declaration that coverage did not exist. Id.  The landlord filed a motion to dismiss, arguing that the federal court should decline to exercise jurisdiction, and also filed its own action in state court seeking a declaration that coverage did exist.  Id.  The district court denied the motion to dismiss.  Id.

On appeal, the Third Circuit vacated the decision of the district court and remanded with directions to dismiss the complaint.  Id. at 136.  The court cited the unsettled status of the insurance clause under Pennsylvania law and the concurrent declaratory action in state court, and found that the assumption of jurisdiction was not a sound exercise of discretion by the district court.  Id.  The Third Circuit also identified situations where a district court does not have discretion to decline jurisdiction, which include "federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the

state proceeding." Id. at 134.  The court set forth three factors that district courts should consider when deciding whether to hear declaratory judgment actions involving insurance issues restricted to state law, which are:

> 1. A general policy of restraint when the same issues are pending in a state court;
>
> 2. An inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; [and]
>
> 3. Avoidance of duplicative litigation.

Id. at 134.

Since Summy was decided, courts within this district have applied it with varying results.  For example, one court in this district abstained from exercising jurisdiction over a declaratory judgment action involving "the same issues that [were] currently being litigated in . . . state court proceedings."  See QBE Ins. Corp. v. Ace Ins. Co., Civ. No. 09-4691, 2011 WL 3510849 at *3 (D.N.J. July 14, 2011).  Those issues included the question of who was the primary insurer of a lift truck on which the state-court plaintiff was working when he was killed by an explosion.  Id.  Another court found that it did not have the discretion to abstain from an insurance coverage declaratory judgment action, where an insurance carrier had denied coverage for environmental claims, but there were no state proceedings pending.  Curtiss-Wright Corp. v. CNA Fin. Corp., Civ. No. 11-4416, 2012 WL 1044493, at *6 (D.N.J. Jan. 26, 2012).  See also Allstate Prop & Cas. Ins. Co. v. Owens, Civ. No. 11-4, 2011 WL 94412, at *2 (W.D. Pa. Jan. 11, 2011) (dismissing declaratory action, although there was no parallel proceeding, because the lack of a parallel proceeding was "outweighed by the lack of any federal interest in this dispute").

The Third Circuit recently revisited the issue of DJA discretion in its Reifer opinion.  The Reifer court found that "the mere existence of a related state court proceeding" does not

automatically require a district court to decline to exercise jurisdiction.  Reifer, 2014 WL 1674112, at *10.  Conversely, a court need not exercise jurisdiction merely because a parallel state proceed does not exist.  Id. at *11.  "Rather, the existence or non-existence of a pending parallel state proceeding is but one factor for a district court to consider."  Id.

      The Third Circuit went on to observe that although the analysis is not black-and-white, the lack of parallel state proceedings weighs heavily in favor of exercising jurisdiction, while the existence of such proceedings "militates significantly in favor of declining jurisdiction."  Id.  Thus, according to this test, a district court first should determine whether parallel state proceedings exist.  Then, the Court should determine whether the significant weight assigned to that finding is outweighed by opposing factors.  Significantly, the Reifer court set forth eight factors that district courts should consider in addition to the existence of a parallel state proceeding in determining whether to exercise DJA jurisdiction, which are:

   (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy

   (2) the convenience of the parties

   (3) the public interest in settlement of the uncertainty of obligation

   (4) the availability and relative convenience of other remedies

   (5) a general policy of restraint when the same issues are pending in a state court

   (6) avoidance of duplicative litigation

   (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata

   (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion

Id. at *12.  The court further indicated that "in insurance cases, Summy's additional guidance should also be considered."  Id.

Applying this test to the case before it, the Third Circuit started with the uncontroversial finding that a parallel state proceeding did not exist.  However, although this tends to weigh strongly in favor of exercising jurisdiction, the Third Circuit found that the district court had not abused its discretion in declining jurisdiction because it was within the court's discretion to determine that the other factors outweighed the lack of a parallel state proceeding.  Id. at *13.  Particularly, the declaratory plaintiff in Reifer advocated for what it framed as an exception to governing Pennsylvania law in the context of legal malpractice insurance contracts.  Id. at *14.  Where "nonfrivolous arguments" are raised to change state law, the case is "better decided in the state court system."  Id.  Because federal courts can only predict, not establish, state law, the factors relating to resolving uncertainty outweighed the lack of a parallel state proceeding.

Here, Defendant argues that jurisdiction is proper because (1) Summy (and evidently Reifer by extension) is inapplicable because the DJA was not invoked when this case was filed or removed, and (2) if Summy and Reifer are applicable, application of the tests they articulate weighs in support of jurisdiction.  The Court discusses these arguments in turn.

**B. Application of the DJA.**

Defendant first argues that the Court has no discretion to decline jurisdiction because this action was not brought under the DJA.  See Def.'s Opp'n at 4-7.  The Court recognizes that since Summy, courts in this district have arrived at different results on this issue.  For example, one district court decided to exercise jurisdiction and thus did not remand a case involving a declaratory judgment because "Plaintiffs did not bring the state court proceeding pursuant to the Declaratory Judgment Act [and] the Defendants removed this case to federal court on the basis

7

of diversity jurisdiction, and not the Declaratory Judgment Act." Curtiss-Wright v. CNA Fin. Corp., Civ. No. 11-4416, 2012 WL 1046536, at *2 (D.N.J. Mar. 28, 2012).

On the other hand, other courts in this district have found that even though a plaintiff may not "specifically reference the [DJA], or the specific statute section," when a plaintiff "clearly seeks declaratory relief . . . consideration of the abstention doctrine under the Declaratory Judgment Act is appropriate." QBE Ins. Corp. v. ACE Ins. Co., Civ. No. 09-4691, 2011 WL 3510849, at *2 n.1 (D.N.J. July 14, 2011). See also Hartford Life Ins. Co. v. Rosenfeld, Civ. No. 05-5542, 2007 WL 2226014, at *4 (D.N.J. Aug. 1, 2007) (although the "actual name of the" DJA was not invoked, "a federal court's authority to grant declaratory relief is necessarily governed by the [DJA]").

The Court believes that the latter approach is the correct one. First, it is unsurprising that Plaintiff did not invoke the DJA in his Complaint filed in state court. Since the DJA only empowers federal courts to enter declaratory judgments, Plaintiff would have no reason to invoke it in a state court complaint. See 28 U.S.C. § 2201(a). The Complaint seeks no other relief aside from a declaratory judgment, and Hartford has offered no suggestion as to what authority this court would have to adjudicate the case if not under the DJA. The DJA "created a 'new remedy.'" United Food & Commercial Workers v. Food Employers Council, Inc., 827 F.2d 519, 524 (9th Cir. 1987). In fact, the statute is entitled "creation of remedy." 28 U.S.C. § 2201. This new remedy was an exception to the traditional rule that "the courts may act only when a complainant is entitled to a coercive remedy, such as a judgment for damages or an injunction." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2751 (3d ed. 2009). As one court has put it, "[a] declaratory judgment action is a statutory

creation, and by its nature is neither fish nor fowl, neither legal nor equitable." American Safety Equip. Corp. v. J.P. Maguire & Co., 391 F.2d 821, 824 (2d Cir. 1968).

While Hartford has not suggested under what authority this Court could decide the case if not under the DJA, the Court will address the notion that it could be decided under New Jersey's declaratory judgment statute, N.J.S.A. 2A:16-51 et. seq. The nature of a declaratory judgment is one of a remedy, which is procedural. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). It is an elementary concept that federal courts sitting in diversity "apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460, 465 (1965). Thus, if the court were to decide this case at all, the federal DJA would be the applicable authority. See Krave Entm't, LLC v. Liberty Mut. Ins. Co., 667 F. Supp. 2d 1232, 1237 (D. Nev. 2009) (rejecting the contention that the Nevada Declaratory Judgment Act would apply in federal court, because declaratory judgment acts are procedural in nature). Thus, the Court believes that the DJA, as a procedural mechanism, provides that all controversies seeking declaratory relief that may be provided under it are discretionary, whether or not a plaintiff has specifically invoked it by name.

Further, in the recent Reifer case, the defendant raised the argument that the district court did not have discretion to decline jurisdiction "because the requirements for diversity jurisdiction were satisfied and the DJA did not apply." Reifer, 2014 WL 1674112, at *4. Although the issue was really whether the suit was in reality an action for money damages, the Third Circuit held without much fanfare that "the DJA applies because in reality Reifer sought only a declaratory judgment." Id. The Third Circuit did not cite as dispositive whether any party had actually invoked the DJA by name, and the same is true here. Because Plaintiff's suit seeks only a declaratory judgment, the discretion conferred by the DJA applies.

9

### C. Existence of a Parallel State Proceeding

The question of whether the crucial "parallel state proceeding" exists is hotly contested between the parties. A "parallel" proceeding which triggers a presumption in favor of abstention is one in which "all the matters in controversy between the parties could be fully adjudicated." Reifer, 2014 WL 1674112, at *7 (citing Brillhart, 316 U.S. at 495). The parties in the two actions need not be completely identical in order to be parallel, but rather a "substantial identity of parties and claims" must exist. IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 306 (3d Cir. 2006). Thus, even where a coverage issue is not yet pending in an underlying litigation, and an insurance carrier is not presently a party there, abstention is appropriate where the coverage issue "will as a matter of logic necessarily arise" at some point in the state proceeding. Evanston Ins. Co. v. Van Syoc Chartered, 863 F. Supp. 2d 364, 370 (D.N.J. 2012) (citing Atlantic Mut. Ins. Co. v. Gula, 84 F. App'x 173 (3d Cir. 2003)).

Hartford indicates that if Plaintiff was not acting as a Rotary employee as defined in its insurance policy, coverage does not exist for him under that policy. See Def.'s Supp. Br. at 2-3 (ECF No. 18). It argues that because interpretation of the Hartford policy is not at issue in the underlying Macauley litigation, that litigation is not parallel. Hartford acknowledges that the issue of whether Rotary may be held vicariously liable for Plaintiff's actions may be determined in the Macauley litigation, but argues that whether coverage exists under the Hartford policy involves a separate analysis. See id. at 3. Hartford further argues that the issues could not be fully adjudicated there because litigation over the availability of insurance coverage cannot be resolved in the context of an underlying action. See id. at 4 (citing Brandimarte v. Green, 37 N.J. 557 (1962)).

10

Plaintiff, on the other hand, argues that the insurance coverage issues could be adjudicated in the state court action, and that had Hartford not removed this action to federal court, it would have filed a motion to consolidate the declaratory action with the Macauley litigation.  See Pl.'s Supp. Br. at 3 (ECF No. 19).

With respect to the law cited by Defendant as to whether the declaratory action could be adjudicated by the court presiding over the Macauley litigation, Hartford has read the New Jersey law it cites far too broadly.  In Brandimarte, the New Jersey Supreme Court found that when jurors hear information about a defendant's insurance coverage or lack thereof, such information may improperly influence the jury.  Brandimarte, 37 N.J. at 563-64.  It says nothing about whether a court can adjudicate both questions of insurance coverage and the underlying tort litigation.  The other two cases cited by Hartford are equally irrelevant, as they both relate to potential jury taint resulting from a jury's knowledge of insurance coverage.  See Wenz v. Allstate Ins. Co., 316 N.J. Super. 570, 576-80 (App. Div. 1998); Krohn v. New Jersey Full Ins. Underwriters Ass'n, 316 N.J. Super. 477, 481 (App. Div. 1998).

Contrary to Defendant's unsupported assertions, it is evidently uncontroversial for New Jersey courts to consolidate an underlying personal injury action with a declaratory action.  See, e.g., Proformance Ins. Co. v Jones, 185 N.J. 406, 410 (2005); Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001).  Because a parallel proceeding is one in which all matters in controversy could be adjudicated, whether Hartford is presently a party to the Macauley litigation is not dispositive.  Reifer, 2014 WL 1674112, at *7.  Further, the factual background in Summy involved an insurance carrier which was not a party to the underlying tort action, yet the Third Circuit determined that "judicial efficiency" favored both actions being decided in state court.  Summy, 234 F.3d at 135-36; see also Evanston, 863 F. Supp. 2d at 370 (although state court

11

litigation and federal declaratory action were not "strictly parallel" because the insurance carrier was not a party to the underlying litigation, discretionary abstention was warranted "because of the closely related underlying state court action").  The insurance coverage issues quite clearly could be adjudicated in the underlying litigation, and thus the Macauley litigation should be considered a parallel proceeding.

### D.  Summy/Reifer Factors

Having determined that the Macauley litigation is a parallel proceeding, the Court begins its analysis with the presumption that it should decline to exercise jurisdiction over the declaratory action.  Reifer, 2014 WL 1674112, at *11.  Thus, jurisdiction should only be exercised if the factors described in Reifer outweigh the substantial weight this Court should give to the existence of parallel state proceedings.

First, the Court observes that some of the factors articulated in Reifer may weigh in favor of Hartford.  It is likely that this Court could "resolve the uncertainty of [the] obligation which gave rise to th[is] controversy."  Id. at *12.  Because there is apparently no unsettled issue of state law involved here, the Court could likely determine whether the terms of Hartford's policy provide coverage for Plaintiff based upon the policy language, the nature of Plaintiff's relationship with Rotary, and his actions or lack thereof on Rotary's behalf on the date of the accident.

However, two of the other factors set forth in Reifer weigh heavily in favor of declining jurisdiction.  Refier indicated that district courts should consider "a general policy of restraint when the same issues are pending in a state court," and "avoidance of duplicative litigation."  Id.

The Court finds that both of these, which were also factors discussed in Summy, weigh in favor of remand.[1]  See Summy, 234 F.3d at 134.

While it is true that the coverage issue is not presently before the court presiding over the Macauley litigation, Hartford acknowledges that the related issue of whether Rotary can be held vicariously liable is before that court.  Although the legal analysis is different, and the issues may not necessarily come out the same way, there is likely to be significant overlap as to what facts are relevant to these two questions.  Both determinations involve an inquiry into Plaintiff's relationship with Hartford's policyholder, Rotary International.  The declaratory action alleges that Hartford's insurance policy language provides for coverage of Rotary's "directors" and "officers."  It further alleges that an endorsement to the policy defines "director" or "officer" to include a "District Governor," and that Plaintiff was acting in his role as "District Governor" when he was involved in the underlying motor vehicle collision, and therefore, insurance coverage should be provided by Hartford.  Notice of Removal, Ex. A ¶¶ 4-5.[2]  Similarly, a determination as to whether vicarious liability attaches to Rotary involves an examination of the relationship between Plaintiff and Rotary, the level of control Rotary exercised over Plaintiff, and the circumstances of Plaintiff's travel at the time of the accident. See Carter v. Reynolds, 175 N.J. 402, 406-08 (2003).  Thus, while the legal calculus might be different as to the final

---

[1] Hartford also argues that litigating this action in federal court in Camden, New Jersey would not be inconvenient to Plaintiff because "Mr. Owen resides in Turnersville, and, as a consequence, he is closer to Camden than he is to Vineland." Def.'s Supp. Br. at 5.  Although the motor vehicle accident precipitating the Macauley litigation occurred in Vineland, the Macauley litigation was filed in the Superior Court of New Jersey, Law Division, Gloucester County.  Pl.'s Mot. Remand Ex. A.  This vicinage is based in Woodbury, New Jersey.  See http://www.judiciary.state.nj.us/gloucester/index.htm.  Woodbury is significantly closer to Plaintiff's place of residence than Vineland is, based upon a calculation using Google Maps (www.maps.google.com, last accessed June 13, 2014).  While this factor does not weigh heavily in this case, the Court finds that it would add some level of inconvenience to require Plaintiff to litigate similar issues simultaneously in federal and state court.

[2] This refers to Plaintiff's declaratory complaint, which is attached to the Notice of Removal.  Because Hartford did not designate it using an exhibit number, the Court will refer to it as Exhibit A.

outcome, many of the same factual questions are relevant, such that parallel litigation involving these issues in state and federal court could be "duplicative."

Plaintiff has demonstrated the existence of parallel state proceedings, which "militates significantly in favor of declining jurisdiction." Reifer, 2014 WL 1674112, at *11. Because several of the additional factors that courts should consider weigh in favor of declining jurisdiction, and because Hartford has not identified any other applicable factor that weighs strongly in favor of exercising jurisdiction, the Court will decline to exercise jurisdiction over this declaratory action.

### E. Attorney's Fees

Plaintiff also requests counsel fees and costs pursuant to 28 U.S.C. § 1447(c). However, a remand under the DJA does not implicate a lack of subject-matter jurisdiction or a defect in removal procedure, and thus does not implicate 28 U.S.C. § 1447(c). Reifer, 2014 WL 1674112, at *2. Thus, the Court has no discretion to award fees and costs pursuant to that statute.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion to remand will be **GRANTED**, and this action will be **REMANDED** to the Superior Court of New Jersey, Law Division, Gloucester County. An appropriate Order shall issue.


Dated: 6/17/2014                                          /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge